SPAIN *v.* JEAN.

5-681                                              279 S. W. 2d 283

Opinion delivered May 23, 1955.

L. B. *Smead* and *McKay, Anderson & Crumpler,* for appellant.

*Bernard Whetstone,* for appellee.

ROBINSON, J.   The property line between neighbors is the issue.   In December, 1934, appellants M. C. Spain and his wife, Daisy Spain, acquired by purchase from the Tri-State Savings & Loan Association a lot in El Dorado, hereinafter referred to as Lot 3.   At that time, the lot adjoining on the north, herein called Lot 2, was owned and occupied by people named Schaff.   Lot 2 is now owned by appellees Grady Jean and his wife Sallie.

The agent for the Savings & Loan Association pointed out what he claimed was the property line between the two lots.   This line extends from the door facing on the Jean's servant's house on the west to a large crack in the sidewalk on the east.   There is a large oak tree a few feet south of the crack in the sidewalk.   A straight line from the southeast corner of the servant's house to the crack in the sidewalk would be diagonal to the true dividing line between the lots as shown by the plat; but a line from the corner of the servant's house to the center of the oak tree would be parallel to the east and west property line.   As shown by a survey, the correct line dividing the two lots is 7 feet 8 inches south of the line from the southeast corner of the servant's house

to the oak tree. According to the plat, this 7 feet 8 inch strip is part of Lot 2.

The Chancellor held that the Spains, owners of Lot 3, had acquired this strip by adverse possession. The Spains appealed, contending that they have acquired by adverse possession that part of Lot 2 up to the crack in the sidewalk which is about 4 feet north of the oak tree. The appellees, Grady Jean and his wife Sallie, have cross-appealed, contending that the evidence does not justify a finding that the Spains have acquired any part of Lot 2 by adverse possession.

According to the plat, the northeast corner of Spain's house is on the property line, and the northwest corner is only about six inches from the line. If the plat is correct, and there is no showing to the contrary, a mistake as to the proper line must have been made at the time the Spain house was built. In the circumstances existing here, where there does not appear to be any good cause for building right up to the property line, it is unreasonable to believe that the house was intentionally constructed in that manner. No average person would suspect that a house had been built right on the line, and when the agent for the Savings & Loan Association pointed out the line as being several feet north of Spain's house, there was no reason to question his statement. At the time Spain made the deal for the property, there was a rose trellis which extended east from the southeast corner of the servant's house. This trellis appeared to indicate the line between the two lots. At that time there was also a large hedge at the rear of the west side of Lot 3 which extended north to a point about six inches past the south side of the servant's house on Lot 2.

After Spain bought the property, he maintained it and cut the grass to the line pointed out by the Savings & Loan agent. He fertilized the yard and planted various kinds of grass as well as a rose bush and a banana fruit tree up to the line he now claims. Spain and Schaff, the former owner of Lot 2, never had a dispute over the dividing line. However, it also appears that Schaff actu-

ally claimed past the crack in the sidewalk up to the oak tree. L. W. McGaugh testified that he worked in the yard for Schaff and was instructed to work up to a line from the servant's house to this oak tree.

When Jean, the present owner of Lot 2, decided to build a wall separating the two lots, the workmen he employed stretched a string from a few inches south of the servant's house to the center of the oak tree, indicating the place Jean intended to build the wall and that he was also claiming to that point.

The Chancellor made a trip to the property and looked over the situation. After considering the entire case, he made a finding that Spain had acquired by adverse possession the south 7 feet 8 inches of Lot 2. When this strip is added to Lot 3, it appears that the dividing line would then be about where Jean intended to build the wall in the first place. We cannot say the Chancellor's finding is contrary to a preponderance of the evidence.

Affirmed on appeal and on cross-appeal.

Mr. Justice GEORGE ROSE SMITH dissents as to affirmance on cross-appeal.

The Chief Justice not participating.